COURT OF APPEALS
DECISION
DATED AND FILED

July 16, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP2237**

Cir. Ct. No. **2025CV44**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

JAMESETTA LAWSON,

    PLAINTIFF-APPELLANT,

  V.

BRADY HANS,

    DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Jefferson County: WILLIAM V. GRUBER, Judge. *Affirmed*.

Before Graham, P.J., Kloppenburg, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Jamesetta Lawson, pro se, appeals a circuit court order that dismissed her claims for breach of contract, unlawful eviction, and civil theft that she brought against Brady Hans, pro se, for disputes that arose following Hans's purchase of land from Lawson.  Lawson argues that the court erred by dismissing the action with prejudice following a trial to the court.  We affirm.

**BACKGROUND**

¶2     The following facts are derived from the parties' pleadings and trial testimony.

¶3     On June 26, 2024, Lawson and Hans entered into a land purchase agreement ("the agreement") in which Lawson agreed to sell to Hans undeveloped land in Fort Atkinson (the land).  The sale included "all improvements and structures contained therein" and a well, a septic tank with associated plumbing, and a "floating deck."  The stated purchase price was $75,000 and Lawson agreed to pay the 2024 property taxes.

¶4     The purchase price of $75,000 was a reduction from Lawson's asking price of $80,000, and was in exchange for a provision in the agreement that allowed Lawson to store items of personal property on the northwest corner of the land for a period of six months after the sale.  Lawson stored a variety of personal property on the land, including a 22-foot travel trailer, a pontoon boat and other boats, a jet ski, cement blocks, wood pieces, fencing materials, and other miscellaneous items.  Lawson agreed to contact Hans before entering the land and Hans agreed not to move Lawson's personal property during the six months following the sale.

2

¶5      Following the sale of the land, disputes between the parties soon arose. Lawson alleged that Hans was moving and removing her personal property without her consent and in violation of the agreement. Hans alleged that Lawson and purchasers of items of her personal property came on to the land and damaged his personal property. Lawson commenced the underlying civil action alleging, as best we can understand, that Hans: (1) breached the agreement by not providing electricity to Lawson on the land, which Lawson also alleged constituted an unlawful eviction, and by moving and removing items of personal property Lawson stored on the land; and (2) committed civil theft by taking items of her personal property, including a wood shed with a trailer base (the shed trailer). As relief, Lawson requested, in pertinent part, over $15,000 in monetary damages.[1]

¶6      The parties proceeded to a bench trial, at which Lawson testified as follows.

¶7      Pursuant to the agreement, Lawson periodically returned to the land to remove items of her personal property. When Lawson returned to the land on July 9, 2024, she discovered that some of her items were missing, including wood pieces and cement blocks. In response, Lawson wrote a letter to Hans that reiterated the location on the land where Lawson was storing her personal property, and that Hans should not take any actions concerning the property.

¶8      In addition to Lawson periodically coming onto the land, Lawson also invited other individuals onto the land to retrieve items of Lawson's personal property that they were acquiring. Lawson did not dispute that one of those

---

[1] Lawson originally demanded a replevin, but withdrew that request at the conclusion of the trial. Therefore, we do not address the issue further.

individuals accidentally damaged the plumbing to the septic tank that Hans had acquired pursuant to the agreement. Lawson also admitted to accidentally backing her travel trailer into the sole electrical pole on the land, tipping the pole, and dislodging an electrical box affixed to the pole.

¶9 In early September, Lawson discovered that Hans had turned off the electricity to the land and locked the door to the electrical box. As a result, the electricity to Lawson's travel trailer was disrupted, and all of Lawson's food in the travel trailer spoiled.

¶10 On December 9, 2024, Lawson discovered that Hans had moved the wood shed off of the trailer, and placed it on the land. Lawson's items, such as shelving and cords, had been removed from the shed and replaced with Hans's items. The trailer was missing, as were some remaining pieces of fencing. Lawson contacted law enforcement to report an alleged theft. That same day, Hans texted Lawson and stated that pursuant to the agreement, Lawson's personal property was not permitted to be on the land after December 26, 2024, and that Hans would dispose of any remaining items of personal property left on the land after that date.

¶11 Hans's trial testimony differed from Lawson's trial testimony in the following respects.

¶12 Pursuant to the agreement, Lawson was permitted only to store her personal property on the land, not to reside on the land, and there was no provision in the agreement that Hans was to provide electricity to Lawson. After Hans purchased the land, Hans connected electricity to the land through an electricity provider and learned that the electricity had been disconnected on the land for the six months prior to his purchase.

4

¶13     When Lawson backed her travel trailer into the electrical pole and the electrical box was dislodged, "live" electrical wires were exposed which Hans believed posed safety risks.  In response, Hans reconsolidated some of Lawson's items of personal property away from the pole to prevent Lawson, or anyone she sent to collect items, from getting near the exposed electrical wires.  Hans presented cost estimates to repair the damage to the electricity pole and to the septic tank plumbing.  Hans also paid the 2024 property taxes on the land because Lawson did not do so, contrary to the agreement.

¶14     Other than moving Lawson's items away from the electricity pole, Hans denied moving, removing, or disposing of any other items of Lawson's personal property.  Rather, he alleged that Lawson and individuals acquiring items of Lawson's personal property had been consistently removing items from the land, which accounted for the diminishing amount of Lawson's personal property on the land.

¶15     Concerning the shed trailer, Hans understood that the shed trailer was included in the sale of the land because the agreement included "all improvements and structures" on the land.  The shed trailer was the only structure on the property and Hans believed that it was included in the sale.  Although the trailer had wheels, "the tires were all completely flat" and it was immovable.  According to the testimony of both parties, because of the danger of flooding, city ordinances required that all structures on the land be movable.

¶16     The circuit court issued an oral ruling in July 2025 dismissing the action with prejudice, which was incorporated into a written order.  Lawson appeals.

## STANDARD OF REVIEW

¶17 On appeal, we apply a highly deferential standard of review to the circuit court's findings of fact. ***Royster-Clark, Inc. v. Olsen's Mill, Inc.***, 2006 WI 46, ¶11, 290 Wis. 2d 264, 714 N.W.2d 530; *see* WIS. STAT. § 805.17(2) (2023-24).[2] The court's factual findings will not be set aside unless they are clearly erroneous, which means that the findings of fact must be "against the great weight and clear preponderance of the evidence." ***Royster-Clark***, 290 Wis. 2d 264, ¶12. "[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." § 805.17(2).

¶18 We will not search the record for evidence opposing the circuit court's decision, but for evidence supporting it, ***Royster-Clark***, 290 Wis. 2d 264, ¶12, and we may affirm on different grounds, ***State v. Earl***, 2009 WI App 9, ¶18 n.8, 320 Wis. 2d 639, 770 N.W.2d 755 ("when we affirm on other grounds, we need not discuss our disagreement with the trial court's chosen grounds of reliance").

¶19 Plaintiffs bear the burden of proving their cases. *See **Acuity Mut. Ins. Co. v. Olivas***, 2006 WI App 45, ¶14, 289 Wis. 2d 582, 712 N.W.2d 374. "Whether a party has met its burden of proof is a question of law that an appellate court reviews de novo." ***Outagamie County v. Melanie L.***, 2013 WI 67, ¶88 n.25, 349 Wis. 2d 148, 833 N.W.2d 607.

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

## DISCUSSION

¶20 As stated, on appeal, Lawson argues that Hans breached the agreement by: discontinuing her access to electricity on the land, which Lawson argues also resulted in her unlawful eviction from the land; and by moving and removing items of her personal property stored on the land, which Lawson argues also constitutes civil theft. We address, and reject, each argument in turn.

### I. Breach of Contract and Unlawful Eviction

¶21 Lawson argues that the circuit court erred when it dismissed her breach of contract claims and her unlawful eviction claim.

¶22 To prove a breach of contract, a plaintiff must show: "(1) the existence of a contract between the plaintiff and the defendant; (2) breach of that contract; and (3) damages." *Pagoudis v. Keidl*, 2023 WI 27, ¶12, 406 Wis. 2d 542, 988 N.W.2d 606. The plaintiff has the burden to prove that the defendant breached the terms of the contract by the ordinary burden of proof applied in civil contract disputes, which requires that the trier of fact "be satisfied to a reasonable certainty by the greater weight of the credible evidence that a breach has occurred." *Eklund v. Koenig & Assocs., Inc.*, 153 Wis. 2d 374, 378, 451 N.W.2d 150 (Ct. App. 1989) (citation omitted); *see also* WIS JI—CIVIL 200 (ordinary burden of proof). The plaintiff also has the burden to prove that a breach caused reasonably certain damage. *See Thorp Sales Corp. v. Gyuro Grading Co, Inc.*, 107 Wis. 2d 141, 152-53, 319 N.W.2d 879 (Ct. App. 1982), *aff'd,* 111 Wis. 2d 431, 331 N.W.2d 342 (1983) (citation omitted) (Damages for breach of contract are recoverable if the evidence is sufficient to enable the trier of fact to make a fair and reasonable approximation.).

7

¶23 In determining whether a plaintiff met the burden of proving a breach of a contract, we independently interpret the terms of a contract. *Deminsky v. Arlington Plastics Mach.*, 2003 WI 15, ¶15, 259 Wis. 2d 587, 657 N.W.2d 411. Wisconsin courts generally enforce contracts deliberately made by the parties because "individuals should have the power to govern their own affairs without interference." *Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical Assocs., LLC*, 2018 WI 112, ¶¶39-40, 384 Wis. 2d 669, 920 N.W.2d 767 (citation omitted). To that end, "[w]e give contract language its plain or ordinary meaning, consistent with what a reasonable person would understand the words to mean under the circumstances." *State ex rel. Massman v. City of Prescott*, 2020 WI App 3, ¶14, 390 Wis. 2d 378, 938 N.W.2d 602 (2019). "Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms" without resorting to extrinsic evidence. *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶23, 326 Wis. 2d 300, 786 N.W.2d 15 (citation omitted).

¶24 Here, neither party disputes that the agreement constitutes an enforceable contract. Next, we turn to the language used by the parties in the agreement to determine whether Lawson met her burden in establishing that Hans breached the agreement and caused Lawson damages.

**A. Access to Electricity**

¶25 Lawson argues that by failing to provide electricity to her, Hans breached the agreement and unlawfully evicted her from the land. We disagree.

¶26 The agreement contains no language requiring Hans to supply electricity on the land to Lawson.

¶27    The pertinent and unambiguous language in the agreement provides only that:

> 3. If Seller has not sold the large items like the travel trailer, pontoon boat, boats, jet sk[i] or other items.  Buyer will allow them to stay on the property for six months after sale of property.
>
> 4. The Seller took off [$]5,000 to cover any [inconveniences] for the six-month stay of seller's property.
>
> • Once the property is sold 6/16/2024, the seller has to contact the buyer before entering the property.
>
> • There will be no fishing without buyer permission[.]
>
> • The seller has her property located outside the fence and on the north-west … side of the property.  That property shall not be moved.  There is a 22-foot travel trailer.  Two pontoon boats and miscellaneous stuff[.]
>
> • When the six months end the buyer has ownership to do as he likes.  The expiration of the six month[s] is Dec[.] 26, 2024.

The agreement requires Hans to allow Lawson to store items of her personal property on the land for six months following the land sale and to not move Lawson's property.  There is no language in the agreement, or language which could be reasonably interpreted as, requiring Hans to provide electricity or any type of utility service to Lawson on the land during the six-month storage period.  Lawson points to no language in the agreement that supports her argument in this regard.  Therefore, we reject Lawson's argument as a matter of law.

¶28    For this reason and others, we also reject Lawson's claim that Hans's failure to provide electricity resulted in her unlawful eviction from the land, which Lawson argues on appeal the circuit court dismissed without considering.  As best we understand, we interpret Lawson's unlawful eviction argument to be that the agreement requires that Hans provide electricity on the

land to Lawson, and that by not doing so, Hans unlawfully evicted her from the land. As established, the agreement contains no provision requiring Hans to provide Lawson with electricity on the land. Lawson also does not demonstrate or develop an argument with citation to the record or to supportive legal authority that a tenancy or a landlord-tenant relationship was established between the parties by the agreement, or by some other mechanism, resulting in her unlawful eviction from the land when Hans did not provide electricity for Lawson's use. This court need not consider arguments that are unsupported by adequate factual and legal citations or are otherwise undeveloped. *See **Dieck v. Unified Sch. Dist. of Antigo***, 157 Wis. 2d 134, 148 n.9, 458 N.W.2d 565 (Ct. App. 1990) (unsupported factual assertions need not be considered without a record cite); *see also **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (undeveloped arguments or arguments unsupported by legal authority need not be considered).

¶29 Accordingly, Lawson's breach of contract and unlawful eviction claims fail as a matter of law.

### B. Moving Personal Property

¶30 Lawson argues that Hans breached the agreement by moving items of her personal property. Specifically, Lawson argues that when she came to the land on December 9, 2024, Hans had "moved all of [her] property from the corner to the road." Hans denied doing so, but did admit to moving items of Lawson's personal property after Lawson hit the electricity pole with her travel trailer, causing the pole to tip, and dislodging the electrical box affixed to the pole. Hans testified that the accident resulted in exposed live electricity wires that posed a safety threat, and that he moved some items of Lawson's personal property away from the pole. Assuming without deciding that Hans's actions in moving

Lawson's items breached the contract, we conclude that the circuit court did not err in dismissing her breach of contract claim concerning these actions because Lawson failed at trial to sufficiently demonstrate that Hans's actions in moving her personal property on this occasion, or on December 9, 2024, caused reasonably certain damages. *See **Thorp Sales Corp.***, 107 Wis. 2d at 152-53. Her claim fails as a matter of law on this ground.

### C. Moving Removing Property and the Shed Trailer

¶31 Lawson argues that Hans breached the agreement by removing items of her personal property, including cement blocks, wood pieces, fencing, and the shed trailer, from the land prior to the December 26, 2024 expiration of the agreement. We reject this argument as follows.

¶32 Lawson has not demonstrated that the circuit court erred in finding that there was not enough evidence to support a nexus between the loss of items of personal property and Hans as the perpetrator of those losses. Hans explicitly denied taking or removing any of Lawson's property, with the exception of the shed trailer which we discuss separately. Further, the trial testimony of both parties and Lawson's text messages introduced as evidence at trial show that Lawson invited other individuals to the land to acquire items of her personal property, and that those individuals were often unsupervised. As a result, there were other people on the land during the relevant time period, unsupervised by Lawson, who had access to, and were acquiring, items of Lawson's personal property. This created a challenge for Lawson at trial in demonstrating factual support for her claim that Hans had removed items of her personal property in violation of the agreement. The court's determination that Lawson failed to do so is not clearly erroneous.

¶33 We next turn to Lawson's argument that Hans's possession of the shed trailer constituted a breach of the agreement. We reject this argument on the following grounds.

¶34 Hans testified that the shed trailer was the only structure on the land, which was not explicitly disputed by Lawson at trial. Lawson also did not dispute that the unequivocal language of the agreement states that all structures passed with the sale of the land. Lawson's implicit position is that the shed was not a structure because it was on a trailer, which the parties agreed was required by a local ordinance given the location of the land in a flood zone. In other words, Lawson's implicit position was that there were no structures on the land at all, because all structures had to be movable due to the risk of flooding. This reading of the contract would render the word "structures," that were to pass with the land at sale, meaningless. A contract "should be given a reasonable meaning so that no part of the contract is surplusage." *State ex rel. J./Sentinel, Inc. v. Pleva*, 155 Wis. 2d 704, 711, 456 N.W.2d 359 (1990). Therefore, we reject Lawson's implicit argument that the shed trailer was not a "structure" included with the sale of the land, and conclude as a matter of law that Lawson has not met her burden of proof in establishing that Hans breached the agreement by acquiring the shed trailer.

## II. Civil Theft

¶35 Lawson argues that the circuit court erred in dismissing her claims of civil theft of various items of personal property, including cement blocks, pieces of wood and fencing, and the shed trailer. As applied to the shed trailer, we reject this claim for the reasons already discussed. As to the other items of personal property that Lawson alleges Hans stole, we reject Lawson's civil theft claims

because she has not met her burden of establishing each element of civil theft by a preponderance of the credible evidence. *See* WIS JI—CIVIL 2420 (Civil Theft), WIS JI—CIVIL 200.

¶36 Lawson accurately states that WIS. STAT. § 895.446 provides a civil cause of action and remedy for theft. *See* § 895.446(1)-(3). To prove civil theft in this instance, Lawson must prove each element of criminal theft set forth in WIS. STAT. § 943.20(1) by the preponderance of the credible evidence. *See* § 895.446(1)-(2). The elements that must be proved to establish civil theft are: (1) the defendant intentionally used, transferred, or retained possession of moveable property of another; (2) the property owner did not consent to the taking of the property; (3) the defendant knew the property owner did not consent; and (4) the defendant intended to permanently deprive the property owner of the possession of the property. *Estate of Miller v. Storey*, 2017 WI 99, ¶40, 378 Wis. 2d 358, 903 N.W.2d 759.

¶37 We reject Lawson's civil theft claim on several grounds, in addition to the reasons we set forth in our rejection of Lawson's breach of contract claim for the alleged removal of items of her personal property. First, the circuit court did not err when it determined that Lawson has not proved each element of civil theft by a preponderance of the credible evidence for each item that she alleges Hans stole. Although Lawson takes issue with the court's findings that the police report did not support Lawson's claim of civil theft and that there was not enough evidence to support a nexus between the loss of items of personal property and Hans as the perpetrator of those losses, she fails to argue or establish that the court's findings were in error. In commenting on the lack of evidence to prove civil theft, the court referred to Lawson's decision not to call one of her named witnesses. Hans also explicitly denied taking or removing any of Lawson's

13

property, with the exception of the shed trailer. Further, the trial testimony of both parties and Lawson's text messages introduced at trial showed that other individuals were being invited, unsupervised, to the land by Lawson to remove items of her personal property, which created a challenge at trial to prove that Hans was responsible for her alleged missing items.

¶38 The onus was on Lawson to prove her case, including by calling witnesses who can offer facts and evidence to support her claims. *See **Waushara County v. Graf***, 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992) (pro se litigants must follow the same procedural rules as attorneys, including the requirement to call one's own witnesses). Lawson has not demonstrated that the circuit court erred in concluding that she failed to meet her burden of drawing a nexus between Hans and the loss of her property. This finding, combined with Lawson's general, conclusory statements in her appellate briefing that Hans stole her property, which are not supported with citations to sufficient evidence in the record, defeat Lawson's civil theft claim.

¶39 Lawson argues that the circuit court failed to give the police report appropriate weight. We reject this argument. The court considered the police report and concluded that the contents of the police report were insufficient to establish civil theft. On appeal, we do not reweigh the credibility of evidence and we defer to the court's factual findings unless they are clearly erroneous. WIS. STAT. § 805.17(2). Lawson has not demonstrated that the court's factual findings concerning the police report are clearly erroneous.

¶40 Accordingly, the circuit court did not err when it dismissed Lawson's civil theft claims.

# CONCLUSION

¶41    We affirm the circuit court's order dismissing Lawson's claims.

*By the Court.*—Order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.